Charles Eugene MARQUEZ,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 87–166.

Supreme Court of Wyoming.

May 9, 1988.

Wyoming Public Defender Program, Martin J. McClain, Deputy State Public Defender, Julie D. Naylor, Appellate Counsel, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Gerald P. Luckhaupt, Asst. Atty. Gen., Cheyenne, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Chief Justice.

The appeal in this case arises from introduction into evidence at trial of a pair of boots taken from appellant Charles Marquez when he was arrested for burglary under § 6–3–301(a), W.S.1977 (1986 Cum. Supp.). Appellant was convicted of the burglary charge and received a sentence of not less than six years nor more than ten years, a fine of $5,000 and an order to pay restitution. Appellant raises one issue on appeal:

"Whether the district court committed reversible error by refusing to suppress the warrantless seizure of Appellant's boots and the fruits of that seizure."

We will affirm.

The manager of the Horizon Liquor and Lounge in Gillette, Wyoming, discovered a break-in when he arrived for work on the morning of December 15, 1986. He found the cold air return duct from the bathroom ceiling on the floor, beer bottles scattered around the bar and three of the money tills pried open. He also noticed the door to the safe was pried off, and that cigarette machines had been broken into.

A sheriff's investigation revealed more evidence. Investigators found $5.00 in loose change, a two-quart jar, a jar lid and a few wire nuts in the heating unit. They also found scrape marks where dirt had been scraped away from the inside of the duct, and footprints and black smudges on the wall surrounding the heating unit.

The sheriff's department arrested appellant on January 6, 1987, for burglary. Officers took appellant to the county detention center where he turned in his clothing and boots for a prison jump suit as a part of the pre-incarceration procedure. The clothing and boots were placed in a box in the property room.

An arraignment took place on February 13, 1987, and appellant pled not guilty to burglary. The case went to jury trial on May 4, 1987, and a guilty verdict resulted. Following a presentence investigation, ap-

pellant received the sentence described above.

Before the May 4 trial, appellant filed a Motion for Return of Seized Property and Suppression of Evidence regarding his work boots, which were taken from him when he was arrested. The sheriff's office took the boots from the property room several months after the arrest and used them to conduct experiments simulating the scuff marks found around the heating unit. After a hearing, the motion was denied and an order issued May 5, 1987. Appellant challenges that order in this appeal.

Both the Fourth Amendment to the United States Constitution and Article 1, § 4 of the Constitution of the State of Wyoming prohibit unreasonable searches and seizures. *Wilde v. State*, Wyo., 706 P.2d 251, 256 (1985). These prohibitions protect an individual's reasonable expectation of privacy against governmental searches or seizures by allowing the government intrusion only after a valid warrant issues. *Ortega v. State*, Wyo., 669 P.2d 935, 940 (1983). Violating an individual's reasonable expectation of privacy in this context, once one is shown to exist, is illegal and evidence it yields may be suppressed under the exclusionary rule. *Parkhurst v. State*, Wyo., 628 P.2d 1369, 1374, cert. denied 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981).

Appellant does not contend that the seizure of his boots during the pre-incarceration process was illegal. See *Illinois v. LaFayette*, 462 U.S. 640, 649, 103 S.Ct. 2605, 2611, 77 L.Ed.2d 65 (1983). Neither can he dispute that the exterior of his boots were in plain view when he was arrested. *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564, 582 (1971). Instead, appellant's sole argument is that his constitutional rights were violated when sheriff's investigators retrieved his boots from the property room without a search warrant after he was jailed.[1]

This case is strikingly similar to the decisions rendered in *United States v. Thompson*, 837 F.2d 673 (5th Cir.1988); and *United States v. Grill*, 484 F.2d 990 (5th Cir. 1973), where the Fifth Circuit upheld warrantless seizures from a prison property room. In those cases the evidence at issue was already being legally held by the authorities, (see *United States v. Edwards*, 415 U.S. 800, 807, 94 S.Ct. 1234, 1239, 39 L.Ed.2d 771, 777–778 (1974)), and had been in plain view during arrest and incarceration. *United States v. Thompson*, supra, at 675; and *United States v. Grill*, supra at 991. The officers in both cases also had reasonable information establishing probable cause to seize the disputed evidence. This combination of factors convinced the Fifth Circuit that such seizures were reasonable without a warrant.

Appellant's situation is the same. His boots were legally seized when he was jailed, and the outsides of his boots were in plain view when he was arrested. The officers who seized his boots later on had a reasonable basis for wanting to compare the soles of the boots with scuff marks on the wall near the heating unit. Appellant had no reasonable expectation of privacy in the boots, and seizing them without a warrant was reasonable.

We also note that it is a sound policy not to require the police to obtain a warrant to examine or remove evidence already legally seized. In *McLaird v. State*, Wyo., 718 P.2d 41, 45 (1986), we said:

"Requiring a warrant for a further seizure after new information has been received regarding an item which has already been lawfully searched and seized would not provide any additional protection of an accused's privacy, and would be a useless and meaningless formality. *Hilley v. State*, Ala., 484 So.2d 485 (1985); and *U.S. v. Oaxaca*, 569 F.2d 518 (9th Cir.1978), cert. denied 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978)."

The pivotal question here is whether appellant's constitutional rights were violated, and what policy, if any, is furthered by requiring a warrant to experiment on the boots as evidence in this situation.

1. It would not be unreasonable to classify this case as an "investigator's performing an experiment on appellant's boots legally in the sheriff's custody case" rather than a "search and seizure case." Such a distinction makes no difference.

See also *United States v. Robertson,* 606 F.2d 853, 860 (9th Cir.1979).

Affirmed.

THOMAS, J., filed a specially concurring opinion.

THOMAS, Justice, specially concurring.

I concur in the decision affirming the judgment of the district court in this instance. It is quite clear to me that Marquez simply had no reasonable expectation of privacy in the work boots that were taken from him at the time of his incarceration. See, e.g., *United States v. Thompson,* 837 F.2d 673 (5th Cir.1988); *United States v. Grill,* 484 F.2d 990 (5th Cir.1973), cert. denied 416 U.S. 989, 94 S.Ct. 2396, 40 L.Ed.2d 767 (1974). Cf., *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). I perceive the circumstances as being distinguishable from *MacLaird v. State,* Wyo., 718 P.2d 41 (1986), because the evidence in that case was seized pursuant to a lawful search of a vehicle. In Marquez' instance, the boots were taken from him when he was incarcerated in the county jail and were not the product of a search as such. Nevertheless, nothing occurred to inhibit their use in evidence. Probable cause to seize the boots was present when they were removed from storage to make the comparison of them with the marks on the wall. This factor serves to distinguish *Ortega v. State,* Wyo., 669 P.2d 935 (1983).

Perhaps, my concern is ultra cautious, but I am convinced that law enforcement officers and prosecutors should not casually rely upon the result in this case. A caveat is in order. I am satisfied that, with respect to property that a prisoner is not permitted to take to the confinement area and therefore must be stored, the jailer is only a bailee. Cf., *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Brooks v. Dutton,* 751 F.2d 197 (6th Cir.1985); 72 C.J.S. *Prisons* § 75 (1987). This appropriately would be classified as a gratuitous bailment for the sole benefit of the bailor. Nevertheless, title to the property would be in the prisoner. See *Knight v. Beckwith Commercial Co.,* 6 Wyo. 500, 46 P. 1094 (1896). In the absence of some legal process designed to preserve the right of possession, I do not believe the law enforcement officers could refuse to deliver the property to anyone if the prisoner had authorized that person to take it. That would not be true with respect to property that had been seized pursuant to a warrant.

Law enforcement authorities have only a possessory interest in property that is stored because the owner is in custody. That possessory interest must yield to a demand from the owner. If the owner directed that possession be transferred to a third party, the law enforcement officials would have to honor that request. On the other hand, seizure of the property as evidence pursuant to a warrant invests the state with a special property interest, which justifies a refusal of the demand of the owner to transfer possession to a third party.

Using this case as an example, even though I find no error in the utilization of Marquez' boots by the law enforcement officers for purposes of comparing them with the marks at the scene of the crime, and their later use in evidence, I question whether they would have been available as evidence if Marquez had directed the authorities in charge of the jail to deliver the boots to his attorney. I can see no defense to a replevin action if the sheriff's office had refused. Succinctly, I suggest that prosecuting attorneys should always obtain a warrant and seize property of prisoners that they propose to use as evidence, even though it is already in the custody of the law enforcement officers because of the prisoner's incarceration. It seems to me this is a relatively simple and easy way to avoid what otherwise might be a very troublesome controversy.